IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KURT HUCKABEE, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| PNC BANK, NATIONAL ASSOCIATION, | Filed Electronically |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Comes now Kurt Huckabee, ("Plaintiff") on behalf of himself and all others similarly situated and alleges as follows:

**INTRODUCTION**

1.  Plaintiff Kurt Huckabee brings this action individually and on behalf of all others similarly situated against PNC Bank, National Association ("Defendant"), alleging violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.* and its implementing regulations, 12 C.F.R. § 205 *et seq.* ("Regulation E") (hereinafter referred to collectively as the "EFTA").

2.  The EFTA establishes the basic rights, liabilities, and responsibilities of consumers who use electronic fund transfer services and of financial institutions that offer these services. The primary objective of the EFTA and Regulation E is the protection of consumers engaging in electronic fund transfers. 12 C.F.R. § 205.1(b). The EFTA requires specific disclosures be given by operators of automated teller machines ("ATMs") to users of ATMs, prior to the imposition of a fee for using an ATM. 15 U.S.C. § 1693b.

3. The Congressional findings and declaration of purpose regarding the EFTA provides:

(a) Rights and liabilities undefined

The Congress finds that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. However, due to unique characteristics of such systems, the application of existing consumer protection legislation is unclear, leaving the rights and liabilities of consumers, financial institutions and intermediaries in electronic fund transfers undefined.

(b) Purposes

It is the purpose of this subchapter to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights.

4. The EFTA specifically requires that ATM machines must have a posted notice in a prominent and conspicuous location on or at the machine informing consumers of the imposition of an ATM surcharge. 15 U.S.C. § 1693b(d)(3).

5. This case is brought under the EFTA based upon the fact that Defendant has imposed ATM fees without posting notice in a prominent and conspicuous location on or at the ATM as required by the EFTA.

6. Plaintiff, on behalf of himself and all others similarly situated, brings this action against Defendant based on Defendant's violation of the EFTA. Plaintiff seeks, on behalf of himself and the proposed class, statutory damages, costs and attorneys' fees, all of which are expressly made available by statute, 15 U.S.C. §1693m. Plaintiff does not seek actual damages.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1693 *et seq.*

8. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

9. Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and Defendant resides in this judicial district.

## PARTIES

10. Plaintiff, Kurt Huckabee, is and, at all times relevant hereto, was a resident of Allegheny County, Pennsylvania. Plaintiff used a certain ATM owned and operated by Defendant within the relevant statute of limitations and was charged an ATM surcharge fee at said ATM as described in this Complaint.

11. Defendant PNC Bank, National Association is a national bank headquartered at 249 Fifth Avenue, Pittsburgh, Pennsylvania 15222.

12. Defendant is an automated teller machine operator, as that term is defined by 12 C.F.R. § 205.16(a), which states: "Automated teller machine operator means any person that operates an automated teller machine at which a consumer initiates an electronic fund transfer or a balance inquiry and that does not hold the account to or from which the transfer is made, or about which the inquiry is made."

## BACKGROUND

**Electronic Funds Transfer Act**

13. "Electronic funds transfer" is defined as "any transfer of funds . . . which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term

includes . . . automated teller machine transactions . . . ." 15 U.S.C. § 1693a(6); *see also* 12 C.F.R. § 205.3(b).

14.     Defendant is an "automated teller machine operator" as that term is defined by 12 C.F.R. § 205.16(a), which states: "Automated teller machine operator means any person that operates an automated teller machine at which a consumer initiates an electronic fund transfer or a balance inquiry and that does not hold the account to or from which the transfer is made, or about which an inquiry is made."

15.     15 U.S.C. § 1693b(d)(3)(A) and (B), and the implementing regulation, 12 C.F.R. § 205.16(b) and (c), require an ATM operator who imposes a fee on a consumer for "host transfer services" (an electronic fund transfer or a balance inquiry) to provide notice to the consumer of the fee before the consumer is committed to the transaction. Specifically, 12 C.F.R. § 205.16(b) states:

> *General.* An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall:
>
> (1)     Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and
>
> (2)     Disclose the amount of the fee.

16.     15 U.S.C. § 1693(d)(3)(B) identifies the manner in which notice must be posted as follows:

> (B)  Notice requirements
>
> (i)     On the machine
>
> The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph ***shall be posted in a prominent and conspicuous location on or at the automated teller machine*** at which the electronic fund transfer is initiated by the consumer.
>
> (ii)    On the screen

> The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction . . . .

17.     The relevant implementing regulation, 12 C.F.R. § 205.16(c) reinforces EFTA's statutory posting requirement, mandating that the fee notice:  1) be posted in a "***prominent and conspicuous location***" on or at the ATM machine; and,  2) "on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying the fee."  12 C.F.R. § 205.16(c)(1) and (2).

18.     15 U.S.C. § 1693b(d)(3)(C), and its implementing regulation, 12 C.F.R. § 205.16(e), provide that no fee may be imposed by an ATM operating in connection with any electronic fund transfer initiated by a consumer for which a notice is required *unless* the consumer is provided the notices required pursuant to 12 C.F.R. § 205.16(c). Specifically, 15 U.S.C. § 1693b(d)(3)(C) states in relevant part:

> (C) **Prohibition on fees not properly disclosed and explicitly assumed by consumer.**  No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless – (i) the consumer receives such notice in accordance with subparagraph (B); and (ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

Similarly, 12 C.F.R. § 205.16(e) provides that:

> (e) *Imposition of fee.* An automated teller machine operator may impose a fee on a consumer for initiating an electronic fund transfer or a balance inquiry only if
>
> (1)  The consumer is provided the notices required under paragraph (c) of this section, and
>
> (2)  The consumer elects to continue the transaction or inquiry after receiving such notices.

5

19. In connection with 2006 amendments to the EFTA, the Board of Governors of the Federal Reserve published its Final Rule and official staff interpretation which, *inter alia*, explained the EFTA's disclosure requirements as follows:

> The final rule clarifies the two-part disclosure scheme established in Section 904(d)(3)(B) of the EFTA. The first disclosure, on ATM signage posted on or at the ATM, allows consumers to identify quickly ATMs that generally charge a fee for use. This disclosure is not intended to provide a complete disclosure of the fees associated with the particular type of transaction the consumer seeks to conduct. Until a consumer uses his or her card at an ATM, the ATM operator does not know whether a surcharge will be imposed for that particular consumer. Rather it is the second, more specific disclosure, made either on the ATM screen or on an ATM receipt, that informs the consumer before he or she is committed to the transaction whether, in fact, a fee will be imposed for the transaction and the amount of the fee . . . .

71 F.R. 1638, 1656.

20. The EFTA imposes strict liability upon ATM operators which fail to comply with its disclosure requirements. *See, e.g., Flores v. Diamond Bank,* 2008 WL 4861511, *1 (N.D. Ill. Nov. 7, 2008) (Hibbler, J.) ("Among the protections afforded to consumers is the right to receive notice from ATM operator of the existence and amount of any fee that operator might impose on consumers for conducting transactions at the ATM. 15 U.S.C. § 1693b(d)(3). This requires the ATM operator to place notice both on the machine itself and upon the ATM screen. 15 U.S.C. § 1693b(d)(3)(B)"). A plaintiff seeking statutory damages under the EFTA need not prove that he or she has sustained any actual financial loss, or that he or she relied upon the lack of mandatory disclosure as an inducement to enter into the transaction. *Burns v. First American Bank*, 2006 WL 3754820, *6 (N.D. Ill. Dec. 19 2006)("Section 1693b(d)(3) prohibits an ATM operator from charging a fee unless it provides notice of its fee on the machine and on the screen, period, no mention of a necessary scienter.").

**Defendants' Conduct**

21. Defendant is an ATM operator regulated under the EFTA, 15 U.S.C. § 1693 *et seq.* and 12 C.F.R. Part 205 (Regulation E), as that term is defined in 12 C.F.R. § 205.16(a).

22. Defendant's ATMs permit consumers to perform electronic fund transfers, as defined in 12 C.F.R. § 205.3.

23. Defendant's ATMs impose fees on consumers who withdraw cash from the ATMs.

24. Defendant failed to post in a prominent and conspicuous location on or at the ATMs a notice that a fee will be imposed for withdrawing cash or for a balance inquiry, resulting in Defendant's improper imposition of a fee to users of the ATMs.

25. Defendant's failure to post the required notice on or at the ATM has resulted in frequent and persistent non-compliance with the EFTA. Said violations of the EFTA have adversely affected hundreds of consumers.

26. Despite knowing of the ATM fee notice provisions of the EFTA, Defendant has violated the EFTA by failing to post the required ATM fee notice in a prominent and conspicuous location on or at the ATMs and improperly imposing ATM fees.

27. Defendant's non-compliance with the ATM fee notice requirements of the EFTA, and subsequent imposition of fees, did not result from a bona fide error.

**Plaintiff's Electronic Funds Transfer With Defendant**

28. Plaintiff is a consumer as defined in 12 C.F.R. § 205.2(e).

29. In December, 2012, Plaintiff made an electronic fund transfer at an ATM operated by Defendant at Stage AE, 400 North Shore Drive, Pittsburgh, PA 15212 (the "Subject ATM").

30. Defendant charged Plaintiff a fee of $2.00 in connection with the above-described transaction.

31. At the time of the above-described transaction, there was no notice posted in a "prominent and conspicuous location on or at" the Subject ATM operated by Defendant apprising consumers that a fee would be charged for the use of the ATM. Indeed, the only notice posted at the Subject ATM operated by Defendant relating to ATM fees was placed inside the hood protecting the screen, rather than on the front of the ATM and was not set off in any way. The Subject ATM looks like this:



32. Specifically, the notice was NOT in capital letters and the type and background of the notice was in a coordinating color and did not otherwise stand out relative to other information on or near the ATM. By comparison, other signs and buttons on the ATM are in contrasting colors, are on the front of the ATM, and/or are backlit. This identical disclosure format was recently held to be NOT "prominent and conspicuous" as required by EFTA as a matter of law. *See Brown v. Wells Fargo & Co.*, --- F.R.D. ---, 2012 WL 3030294 (D.Minn. July 25, 2012).

33. Because Defendant did not post the required notice in a "prominent and conspicuous location on or at" the ATM operated by Defendant, it was not permitted to charge a usage fee to Plaintiff and other class members.

## CLASS ALLEGATIONS

34. Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.

35. Plaintiff seeks to represent a class of similarly situated person, consisting of (a) all consumers (b) who were not banking customers of Defendant (c) who were charged or assessed any transaction fee, including any "terminal owner fee," surcharge or ATM transaction fee of any kind (d) in connection with any electronic fund transfer and/or balance inquiry at any ATM owned or operated by Defendant (e) where the on-machine fee notice was placed in the same configuration as the notice on the Subject ATM (f) on or after the date one year prior to the filing of this action and continuing until Defendant is compliant with the fee notice requirements of the EFTA.

36. Congress expressly intended that the EFTA would be enforced, in part, through private class actions. 15 U.S.C. § 1693m(a).

37.     <u>Numerosity</u>:  The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

38.     Plaintiff is informed and believes, and thereon alleges, that there are at minimum, thousands of members of the class described above.

39.     The exact size of the class and the identities of the individual members thereof are ascertainable through Defendant's records.

40.     Members of the class may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notices, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by this Court.

41.     Defendant can generate data for its ATMs identifying each transaction in which a fee was charged.  The data will include the date of the transaction, the amount of the fee and the personal account number ("PAN") for the consumer.  The PAN includes a bank identification number ("BIN").  This information can be used to identify class members.

42.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the class.  The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful and willful conduct.

43.     Plaintiff and members of the class were each consumers who used an ATM machine operated by Defendant to make an electronic fund transfer or balance inquiry and were charged a terminal owner fee, notwithstanding that notice of the fee required by EFTA "on or at" Defendant's terminals was not posted prominently and conspicuously.

44. Plaintiff and class members seek recovery of statutory, not actual, damages.

45. <u>Common Questions of Fact and Law:</u>  There is a well-defined community of interest and common questions of fact and law affecting members of the class.

46. The questions of fact and law common to the class predominate over questions which may affect individual members and include the following:

    a. Whether, under 15 U.S.C. § 1693b(d)(3)(A) and 12 C.F.R. 205.16, Defendant was, at all relevant times, an automated teller machine operator that imposed a fee on consumers for providing host electronic fund transfer services to those consumers;

    b. Whether Defendant complied with the notice requirements of 15 U.S.C. § 1693(d)(3)(B) and 12 C.F.R. 205.16; and,

    c. Whether Plaintiff and members of the class are entitled to statutory damages, costs and/or attorneys' fees for Defendant's acts and conduct.

47. <u>Adequacy of Representation:</u>  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

48. <u>Superiority:</u>  A class action is superior to other available means for the fair and efficient adjudication of the claims of the class.  While the aggregate damages which may be awarded to the members of the class are likely to be substantial, the damages suffered by the individual members of the class are relatively small.  As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the class to individually seek redress for the wrongs done to them.  Plaintiff does not know of any other litigation concerning this controversy already commenced by or against any member of the class.  The likelihood of the individual members of the class prosecuting separate

claims is remote. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## **SUBSTANTIVE VIOLATION**

49. 15 U.S.C. § 1693b(d)(3)(A) provides that as a prerequisite to imposition of a usage fee upon a consumer for host transfer services, an automated teller machine operator must provide notice to the consumer consistent with subparagraph (B) of that statutory section.

50. Subparagraph (B) of 15 U.S.C. § 1693(d)(3) provides in relevant part:

(B) Notice requirements

(iii) On the machine

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted *in a prominent and conspicuous location* on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

51. In turn, subparagraph (c) of 15 U.S.C. § 1693b(d)(3) states, in relevant part:

(C) Prohibition on fees not properly disclosed and explicitly assumed by the consumer

No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless—

(i) The consumer receives such notice in accordance with subparagraph (B) . . . .

52. EFTA's statutory notice requirements are reinforced by the implementing regulations set forth at 12 C.F.R. § 205.16.

53. Defendant violated the notice requirements of EFTA in connection with providing host transfer services to Plaintiff and the Class, by failing to post a fee disclosure notice in a prominent and conspicuous location on the ATM which it operated.

54. Defendant was prohibited from imposing any usage fee or similar fee for providing host transfer services because it failed to comply with EFTA's notice requirements, as above described.

55. 15 U.S.C. § 1693m provides that Defendant shall be liable to Plaintiff and the Class for violations of 15 U.S.C. § 1693 *et seq.* in the amount of, *inter alia,* statutory damages to be determined.

56. By way of this action, Plaintiff seeks the imposition of statutory damages, costs of suit and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for:

A. An order certifying the Class and appointing Plaintiff as representative of the Class, and appointing undersigned counsel as Class Counsel;

B. An award to Plaintiff and the members of the Class of statutory damages pursuant to 15 U.S.C. § 1693m;

C. Payment of costs of suit herein incurred pursuant to 15 U.S.C. § 1693m(a)(3);

D. Payment of reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3), the common fund doctrine and other principles of law and equity; and

E. For other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 3, 2012									Respectfully Submitted,

										/s/ R. Bruce Carlson
										R. Bruce Carlson (PA56657)
										bcarlson@carlsonlynch.com
										Stephanie Goldin (PA202865)
										sgoldin@carlsonlynch.com
										Carlos Diaz (PA205177)
										cdiaz@carlsonlynch.com
										CARLSON LYNCH LTD
										PNC Park
										115 Federal Street, Suite 210
										Pittsburgh, PA 15212
										(p)  (412) 322-9243
										(f)  (412) 231-0246